# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| ISADORA Y. WALKER, and ANDREA G. GARCIA individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>BANK OF AMERICA, N.A.,<br><br>Defendant. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>Jury Trial Demanded |

Isadora Y. Walker and Andrea G. Garcia (collectively, "Plaintiffs"), individually and on behalf of the Class defined below of similarly situated persons, allege the following against Defendant Bank of America N.A. ("Bank of America" or "Defendant"), based upon personal knowledge with respect to themselves and on information and belief derived from, among other things, investigation of counsel and review of public documents as to all other matters:

## <u>NATURE OF THE ACTION</u>

1.     When dealing with consumer contracts, normally presented on a take-it-or-leave-it basis, legislatures around the nation have statutorily prohibited companies from taking advantage of customers through unfair acts. In the context of consumer fees, whether a fee is considered unfair frequently turns on a simple principle: if the consumer will not receive a commensurate benefit from the fee, then the consumer must have had a practical opportunity to avoid the fee.

2.     Nowhere can this principle be seen more clearly than in the banking sector. Financial institutions earn profits by charging fees for their services. For example, banks allow customers to write checks, and in return the customers promise that there will be funds in their account to cover the check when it is deposited. If a customer breaks this understanding and writes a check without the funds to cover it (i.e., bounces a check), the bank will charge a fee to the

customer that wrote the check, which the customer could have avoided by ensuring sufficient funds were in the account.

3.       On the other side of the transaction, however, the recipient of the check typically has no way to know whether a check he or she deposits is going to bounce. Because the depositor could not have reasonably known the check was bad, it is unfair to charge the depositor a fee for returning the check.

4.       By contrast, the bank maintains highly sophisticated systems for clearing checks and knows, or should know, when the person that wrote the check does not have sufficient funds to cover the check or has access to the reasons that the check may not otherwise be valid.

5.       Nevertheless, despite having these capabilities, Bank of America routinely charges and collects what it refers to as "Returned Item Chargeback Fees." By charging these Returned Item Chargeback Fees, Bank of America unfairly targeted its customers with financial penalties for faulty checks the customers had no hand in issuing. Plaintiffs were shocked when they were charged these fees because they did nothing wrong yet were penalized by Bank of America. There was nothing Plaintiffs could do to avoid — or even anticipate — a Returned Item Chargeback Fee assessed by Bank of America at the time the deposit was returned.

6.       By charging its customers significant fees in situations where the customer did nothing wrong and could not have avoided the fee through reasonable diligence, Bank of America acted in a manner that is unfair, oppressive, and against public policy.

7.       Recent guidance from the Consumer Financial Protection Bureau ("CFPB") has reaffirmed the unlawful nature of Bank of America's Returned Item Chargeback Fee policy. In October 2022, the CFPB issued a compliance bulletin stating that it is an unfair act or practice for an institution to have a blanket policy of charging Returned Item Chargeback Fees anytime that a check is returned unpaid, irrespective of the circumstances or patterns of behavior on the account; the CFPB noted that these fees cause substantial monetary injury for each returned item, which

2

consumers likely cannot reasonably avoid because they lack information about and control over whether a check will clear.[1]

8.     California, among other States, has recognized the unfair nature of these fees and has recently amended the California Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 17200 *et seq*., to expressly prohibit "junk fees" where a business reveals unavoidable fees later in the buying process. As California Attorney General Rob Bonta noted in a press release: "These deceptive fees prevent us from knowing how much we will be charged at the outset. They are bad for consumers … [and] cost Americans tens of billions of dollars each year."[2]

9.     Accordingly, Plaintiffs, on behalf of themselves and the Class and Subclasses (defined below), now seek to hold Bank of America accountable for its unlawful and unfair policy, and seek damages, restitution, and injunctive relief, as set forth below.

## PARTIES

10.     Plaintiff Isadora Walker is, and at all times mentioned herein was, an individual citizen of the State of Georgia residing in the County of Douglas and held a Bank of America Checking account during the applicable statute of limitations period. Ms. Walker opened her Bank of America account in Georgia, and, therefore, her account is located there.

11.     Plaintiff Andrea Garcia is, and at all times mentioned herein was, an individual citizen of the State of California residing in the County of Solano and held a Checking account during the applicable statute of limitations period. Ms. Garcia opened her Bank of America account in California, and, therefore, her account is located there.

---

[1] Consumer Financial Protection Bulletin 2022–06, Unfair Returned Deposited Item Fee Assessment Practices (Oct. 26, 2022), available at: https://www.consumerfinance.gov/compliance/supervisory-guidance/cfpb-bulletin-2022-06-unfair-returned-deposited-item-fee-assessment-practices/ (last accessed March 26, 2024).

[2] Attorney General Bonta's Sponsored Bill to Ban Hidden Fees in California Signed into Law (Oct. 7, 2023), available at: https://oag.ca.gov/news/press-releases/attorney-general-bonta%E2%80%99s-sponsored-bill-ban-hidden-feescalifornia-signed-law (last accessed March 26, 2024).

3

12. Defendant Bank of America N.A. is a subsidiary of Bank of America Corporation. Bank of America N.A. is a multinational financial services institution engaged in the business of providing retail banking services to consumers and businesses, including Plaintiffs and members of the putative Class, which includes the issuance of checking accounts. Defendant operates banking centers, and thus conducts business, throughout the States of Georgia and California among others. Bank of America is headquartered in Charlotte, North Carolina. In 2022, Bank of America took in over $42 billion in noninterest revenue.[3]

## JURISDICTION AND VENUE

13. The Court has subject matter jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2). The amount in controversy exceeds $5 million, exclusive of interest and costs. Upon information and belief, the number of class members is over 100, many of whom have different citizenship from Defendant. Thus, minimal diversity exists under 28 U.S.C. § 1332(d)(2)(A).

14. This Court has jurisdiction over Defendant because it operates in this District, is headquartered in this District, and a substantial part of the unlawful business practices which give rise to this action occurred in this District.

15. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a)(1) because a substantial part of the events giving rise to this action occurred in this District.

## FACTUAL BACKGROUND

### I. RETURNED ITEM CHARGEBACK FEES

16. Returned Item Chargeback Fees are levied when a check is returned because it cannot be processed against the originator's account. In other words, when Person A writes a check

---

[3] *See* Form 10-K for Bank of America Co. (2022) at 28. Available at: https://investor.bankofamerica.com/regulatory-and-other-filings/annual-reports/content/0001140361-23-013653/0001140361-23-013653.pdf (last accessed March 26, 2024).

4

to Person B and the check bounces or is returned unpaid, the bank charges Person B a fee even though Person B had no reasonable means of knowing the check would not clear. There are a multitude of reasons why a check someone received would bounce, nearly all of which lie entirely outside the control of the depositor. The reason could be insufficient funds, a stop payment order issued by the check writer, a closed or foreign account, or even a minor discrepancy on the check itself. Even though the depositor has no control over the check, the Returned Item Chargeback Fees charged can range from $5 to over $30 and often vastly exceed the actual cost of processing the returned check.

17.     Returned Item Chargeback Fees are widespread within the banking industry, with most major banks and financial institutions levying them as part of their standard fee structure. If disclosed at all, Returned Item Chargeback Fees are often found in dense and convoluted legal agreements or associated fee schedules, making it difficult for consumers to discover them until they are actually charged. The ubiquitous nature of Returned Item Chargeback Fees has raised concerns about the fairness and predatory nature of imposing penalties on the depositor, particularly because these fees are not actually linked to any real administrative cost of check processing. In fact, these fees are nothing more than veiled revenue-generating tools that penalize innocent depositors for the actions of others.

18.     Recognizing the potential for abuse, the CFPB issued published Bulletin 2022-06 on November 7, 2022 (the "Bulletin"). The Bulletin, entitled *Unfair Returned Deposited Item Fee Assessment Practices*, highlights the CFPB's concerns about deceptive practices related to Returned Item Chargeback Fees, particularly instances where fees are disproportionate to the actual costs incurred by the bank, or where customers are not adequately informed about the fees and their potential applicability.

19.     The CFPB deemed these fees unfair under the Consumer Financial Protection Act. It took issue with financial institutions, like Bank of America, that charge consumers Returned

5

Item Chargeback Fees "for all returned transactions irrespective of the circumstances of the transaction or patterns of behavior on the account." The Bulletin provides in relevant part:

> The Consumer Financial Protection Act (CFPA) prohibits covered persons from engaging in unfair acts or practices. Congress defined an unfair act or practice as one that (A) "causes or is likely to cause substantial injury to consumers which is not reasonably avoidable," and (B) "such substantial injury is not outweighed by countervailing benefits to consumers or to competition."
>
> Blanket policies of charging Returned Deposited Item fees to consumers for all returned transactions irrespective of the circumstances of the transaction or patterns of behavior on the account are likely unfair.
>
> Fees charged for Returned Deposited Items cause substantial injury to consumers. Under the blanket policies of many depository institutions, Returned Deposited Item fees cause monetary injury, in the range of $10-19 for each returned item. **Depository institutions that charge Returned Deposited Item fees for returned checks impose concrete monetary harm on a large number of customers**.
>
> In many of the instances in which Returned Deposited Item fees are charged, consumers would not be able to reasonably avoid the substantial monetary injury imposed by the fees. **An injury is not reasonably avoidable unless consumers are fully informed of the risk and have practical means to avoid it.** Under blanket policies of many depository institutions, Returned Deposited Item fees are charged whenever a check is returned because the check originator has insufficient available funds in their account, the check originator instructs the originating depository institution to stop payment, or the check is written against a closed account. But **a consumer depositing a check would normally be unaware of and have little to no control over whether a check originator has funds in their account, will issue a stop payment instruction, or has closed the account**. Nor would a consumer normally be able to verify whether a check will clear with the check originator's depository institution before depositing the check or be able to pass along the cost of the fee to the check originator.

87 FR 66940, 66941 (emphases added).[4]

---

[4] The Bulletin is available at https://www.federalregister.gov/documents/2022/11/07/2022-23933/bulletin-2022-06-unfair-returned-deposited-item-fee-assessment-practices (last accessed March 6, 2024).

20.     The CFPB focused on the lack of benefit to consumers and the disproportionality associated with these fees, finding that "[c]heck processing is a service made broadly available to all depositors of checks, and ***there is no separate benefit to consumers from having a deposited check returned, as opposed to paid***." *Id.* The CFPB further found that these fees are ***not*** "well-tailored to recoup costs" because "the fee is charged to depositors even where the depository institution incurs no such loss from the returned transaction, and institutions usually do not collect the fee in those limited circumstances where they actually incur a loss." *Id.* Evidently, the CFPB has signaled its intention to impose stricter oversight and raise legal challenges against these unfair and predatory practices.

## II.     BANK OF AMERICA IMPOSED A BLANKET "JUNK FEE" ON ALL RETURNED DEPOSITS, REGARDLESS OF CAUSE

21.     Bank of America operates a vast retail network across the country. Within this network, Bank of America offers a diverse range of deposit accounts, including a range of different checking and savings options, to customers like Plaintiffs and the putative Class and Subclass members.

22.     Upon opening a deposit account with Bank of America, each customer receives a comprehensive "Deposit Agreement" ("Deposit Agreement"), which — along with the schedule of fees — forms the contract between Bank of America and the customer and provides the terms and conditions governing each deposit account held with Bank of America. Acceptance of the Agreement's terms is mandatory for both opening and maintaining a deposit account with Bank of America.[5] As Bank of America makes clear, it "may change or supplement" the terms of the Deposit Agreement. *Id.*

23.     The applicable Deposit Agreements states that if a cashed or deposited item is returned to Bank of America "at any time for any reason by the bank on which is drawn or any

---

[5] *See* Bank of America Deposit Agreement, effective November 1, 2019, The Agreement for Your Account, at 2, attached hereto as Exhibit A ("**Deposit Agreement**").

7

collecting bank . . . *[w]e may charge you a fee for each returned item*." *Id.* at 28. The Personal Schedule of Fees[6] makes clear that Bank of America charged a $12 Returned Item Chargeback Fee. *Id.* at 14. Until it ostensibly stopped charging its customers these fees in the last couple of years, Bank of America charged its customers a Returned Item Chargeback Fee each and every time a deposited item was returned regardless of circumstances.

24.     While depositing a check, customers naturally anticipate receiving the funds. However, factors entirely outside their control can lead to a deposit being returned unpaid. This can occur due to the originator lacking sufficient funds, a stop-payment order issued by the originator, or even processing errors. These unpredictable circumstances can expose the depositor to unfair and unavoidable financial repercussions.

25.     Consumers attempting to deposit funds, such as Plaintiffs, lacked any control over whether the deposit would be returned, and had no way of protecting themselves against the possibility of the deposit being returned and being charged a fee. Depositors could not realistically verify with the originator's institution whether there were sufficient funds in the issuer's account before depositing an item.

26.     Conversely, Bank of America maintains sophisticated systems to make sure that checks submitted for deposit are valid for processing and that the person or business who wrote the check has sufficient money to pay it. Thus, Bank of America has the capability for determining the reason that a check is not valid and the person or business at fault for any invalid check.

27.     Bank of America's blanket policy of charging Returned Item Chargeback Fees on all returned deposits, regardless of the origin of the check or the cause of its return, is unfair and lacks good faith because it penalizes them for circumstances outside of their control.

### III.     BANK OF AMERICA CHARGED PLAINTIFFS RETURNED ITEM CHARGEBACK FEES

---

[6] *See generally,* Personal Schedule of Fees, effective November 1, 2019, attached hereto as Exhibit B ("**Schedule of Fees**").

8

### A. **Plaintiff Isadora Walker**

28.    Prior to the applicable limitations period, Plaintiff Isadora Walker opened a Bank of America checking account in Georgia.

29.    Ms. Walker's Account was opened in Georgia and, therefore, it is located in Georgia and remains so to this day.

30.    On or around August 25, 2021, Ms. Walker attempted to deposit a check into her Bank of America account.

31.    At the time she attempted to deposit the check into her Bank of America account, Ms. Walker had no reason to believe that the check would be returned unpaid.

32.    On or around August 25, 2021, to Ms. Walker's surprise and by no fault of her own, the check she deposited was returned unpaid. Bank of America charged Ms. Walker a Returned Item Chargeback Fee of $12.00. The Returned Item Chargeback Fee was deducted from the balance of Ms. Walker's account.

33.    Because the $12 Returned Item Chargeback Fee which Bank of America charged Ms. Walker was assessed pursuant to Bank of America's blanket policy of assessing such fees irrespective of the facts and circumstances surrounding her attempt to deposit the check into her account, the Returned Item Chargeback Fee was unfair and unlawful.

### B. **Plaintiff Andrea Garcia**

34.    Prior to the applicable limitations period, Plaintiff Andrea Garcia opened a Bank of America checking account in California.

35.    Ms. Garcia's Account was opened in California and, therefore, it is located in California and remains so to this day.

36.    On or around July 26, 2021, Ms. Garcia attempted to deposit a check into her Bank of America checking account.

37.    At the time Ms. Garcia attempted to deposit the check into her Bank of America account, she had no reason to believe that the check would be returned unpaid.

9

38. Shortly thereafter, to Ms. Garcia's surprise and by no fault of her own, the check was returned unpaid. Bank of America charged Ms. Garcia a Returned Item Chargeback Fee of $12.00. The Returned Item Chargeback Fee was deducted from the balance of Ms. Garcia's account.

39. Because the Returned Item Chargeback Fee which Bank of America charged Ms. Garcia was assessed pursuant to Bank of America's blanket policy of assessing such fees irrespective of the facts and circumstances surrounding her attempt to deposit the check into her account, the Returned Item Chargeback Fee was unfair and unlawful.

## CLASS DEFINITION AND ALLEGATIONS

40. Plaintiffs bring this action pursuant to Rule 23(b)(2) and (b)(3) of the Federal Rules of Civil Procedure on behalf of themselves and on behalf of all other persons similarly situated.

41. Plaintiffs propose the following Class definitions, subject to amendment as appropriate:

> **Nationwide Class** (the "**Class**")
> All individuals who, during the applicable statute of limitations, had or have accounts with Bank of America and were charged a Returned Item Chargeback Fee by Bank of America.

> **Georgia State Class** (the "**Georgia Subclass**")
> All individuals who, during the applicable statute of limitations, had or have accounts with Bank of America located in Georgia and were charged a Returned Item Chargeback Fee by Bank of America.

> **California State Class** (the "**California Subclass**")
> All individuals who, during the applicable statute of limitations, had or have accounts with Bank of America located in California and were charged a Returned Item Chargeback Fee by Bank of America.

42. Excluded from the Class and Subclasses are Defendant, its parents, subsidiaries, affiliates, officers and directors, and judicial officers and their immediate family members and associated court staff assigned to this case.

10

43.     Plaintiffs reserve the right to modify or amend the definitions of the proposed Classes before the Court determines whether certification is appropriate.

44.     The proposed Class and Subclasses meet the criteria for certification under Fed. R. Civ. P. 23(a), (b)(2), and (b)(3).

45.     Plaintiffs expressly disclaim any intent to seek recovery in this action for personal injuries that they or any Class member may have suffered.

46.     **Numerosity**. This action is appropriately suited for a class action. The members of the Class and Subclasses are so numerous that the joinder of all members is impracticable. Plaintiffs are informed, believe, and thereon allege, that each proposed Class and Subclass contains thousands of accountholders who have been damaged by Defendant's conduct as alleged herein, the identity of whom is within the knowledge of Defendant and can be easily determined through Defendant's records.

47.     **Commonality.**  This action involves questions of law and fact common to the Class. The common legal and factual questions include, but are not limited to, the following:

a.   Whether Defendant's assessment of Returned Item Chargeback Fee within the applicable statute of limitations was unfair, deceptive, or misleading;

b.   Whether Defendant breached its Implied Covenant of Good Faith and Fair Dealing by assessing Returned Item Chargeback Fees on transactions in cases where the accountholder had no reason to believe the deposit would be returned unpaid;

c.   Whether Plaintiff and the Class and Subclass suffered damages as a result of Defendant's assessment of Returned Item Chargeback Fee;

d.   Whether Defendant was unjustly enriched as a result of charging Plaintiffs and the Class the "Returned Item Chargeback Fee";

e.   Whether Defendant's conduct, as alleged herein, constitutes a violation of Georgia's Fair Business Practices Act, codified at O.C.G.A. §§ 10-1-393 *et seq.* (the "FBPA")**;**

f.   Whether Defendant's conduct, as alleged herein, constitutes a violation of Cal. Civ. Code §§ 1750 *et seq.*;

11

g.  Whether Defendant's conduct, as alleged herein, constitutes a violation of Cal. Bus. & Prof. Code §§ 17200 *et seq*.;

h.  The proper method or methods by which to measure damages and/or restitution and/or disgorgement; and

i.  Whether Plaintiffs and the Class and Subclasses are entitled to declaratory and injunctive relief and the nature of that relief.

48.  **Typicality**. Plaintiffs' claims are typical of the claims of the members of the Class and Subclasses, because, *inter alia*, all Class and Subclass members have been injured through the uniform misconduct described above and were charged improper and deceptive fees as alleged herein. Moreover, Plaintiffs' claims are typical of the Class and Subclass members' claims because Plaintiffs are advancing the same claims and legal theories on behalf of themselves and all members of the Class and Subclasses. Plaintiffs would only seek individual or actual damages if class certification is denied. In addition, Plaintiffs are entitled to relief under the same causes of action and upon the same facts as the other members of the proposed Class and Subclasses.

49.  **Adequacy of Representation**. Plaintiffs will fairly and adequately protect the interests of the members of the Class. Plaintiffs and the Class each maintained an account with Defendant and were harmed by Defendant's misconduct in that they were assessed unfair Returned Item Chargeback Fees. Plaintiffs will fairly and adequately represent and protect the interests of the Class and Subclasses and have retained competent counsel experienced in complex litigation and class action litigation. Plaintiffs have no interests antagonistic to those of the Class or Subclasses, and Defendant has no defenses unique to Plaintiffs.

50.  **Superiority**. A class action is superior to other methods for the fair and efficient adjudication of this controversy. The damages or other financial detriment suffered by individual Class and Subclass members is relatively small compared to the burden and expense that would be entailed by individual litigation of their claims against Defendant. It would be virtually impossible for a member of the Class or one of the Subclasses, on an individual basis, to obtain effective redress for the wrongs done to him or her. Further, even if the Class or Subclass members could

12

afford such individualized litigation, the court system could not. Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts. Individualized litigation would also increase the delay and expense to all parties and the court system from the issues raised by this action. By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, economies of scale, and comprehensive supervision by a single court, and presents no management difficulties under the circumstances here.

51.     Plaintiffs seek monetary damages, including compensatory damages on behalf of the Class and Subclasses, and other equitable relief on grounds generally applicable to the entire Class and the Subclasses. Unless a Class and Subclasses are certified, Defendant will be allowed to profit from its unfair and unlawful practices, while Plaintiffs and the members of the Class and Subclasses will have suffered damages. Unless a Class-wide injunction is issued, Defendant may continue to benefit from these violations, and the members of the Class and Subclasses and the general public will have to accept being unfairly treated.

52.     Defendant has acted and refused to act on grounds generally applicable to the Class and Subclasses, making final injunctive relief appropriate with respect to the Class and Subclasses as a whole.

<u>COUNT I</u>
**BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING**
**(On behalf of Plaintiffs and the Class)**

53.     Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1-52 as if fully set forth herein.

54.     Plaintiffs bring this claim individually and on behalf of the members of the Class against Defendant.

55.     A covenant of good faith and fair dealing is implied in Plaintiffs' and the Class members' Deposit Agreements with Defendant. Whether by common law or statute, all contracts impose upon each party a duty of good faith and fair dealing. Good faith and fair dealing, in

connection with executing contracts and discharging performance and other duties according to their terms, means preserving the spirit — not merely the letter — of the bargain. Thus, the parties to a contract are mutually obligated to comply with the substance of their contract in addition to its form. Evading the spirit of the bargain and abusing the power to specify terms constitute examples of bad faith in the performance of contracts.

56. The material terms of the Deposit Agreement therefore included the implied covenant of good faith and fair dealing, whereby Defendant covenanted that it would, in good faith and in the exercise of fair dealing, deal with Plaintiff and each member of the Class fairly and honestly and do nothing to impair, interfere with, hinder, or potentially injure Plaintiffs' and the Class members' rights and benefits under the contract.

57. Plaintiffs and the Class members have performed all conditions, covenants, and promises required by each of them on their part to be performed in accordance with the terms and conditions of the contract, except for those they were prevented from performing or which were waived or excused by Defendant's misconduct.

58. As alleged herein, Defendant breached the implied covenant of good faith and fair dealing by systematically charging Plaintiffs and the Class members Returned Deposit Item Fees for attempting to deposit checks that could not be deposited irrespective of the facts and circumstances surrounding the accountholder's attempt to deposit the check into their account.

59. Defendant's actions to maximize its revenue from Returned Deposit Item Fees impedes the right of Plaintiff and other members of the Class to receive benefits that they reasonably expected to receive under the contract, as the money entrusted to Defendant for their banking activities was reduced.

60. On information and belief, Defendant's actions as alleged herein were performed in bad faith, in that the purpose behind the practices and policies alleged herein was to maximize Defendant's revenue from Returned Deposit Item Fees at the expense of their customers, in contravention of Plaintiffs' and the Class members' reasonable expectations.

61.     Plaintiffs and members of the Class have sustained damages as a result of Defendant's conduct as alleged herein.

62.     As a direct and proximate result of Defendant's breach of the implied covenant of good faith and fair dealing, Plaintiffs and the Class members have been damaged in an amount to be proven at trial and seek relief as set forth in the Prayer below.

<u>**COUNT II**</u>
**UNJUST ENRICHMENT**
**(On behalf of Plaintiffs and the Class)**
*(Plead in the alternative to Count I)*

63.     Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1–62 as if fully set forth herein.

64.     Plaintiffs bring this claim individually and on behalf of the members of the Class against Defendant.

65.     Plaintiffs and the members of the Class conferred a benefit on Defendant, which Defendant knew about, when they enrolled in Defendant's deposit accounts and were charged Returned Item Chargeback Fees.

66.     Plaintiffs and members of the Class were, and many continue to be, customers of Defendant with checking and savings accounts. They reasonably believed that Bank of America would not charge them unreasonable fees beyond their control. Plaintiffs and members of the Class suffered financial losses when they were charged Returned Item Chargeback Fees in the form of funds deducted from their accounts.

67.     By charging Returned Item Chargeback Fees, Defendant unjustly enriched itself by taking a benefit in the form of a $12 charge each time an item was returned from each of their customers' accounts, regardless of their own action, without providing any additional service or value to their customers, including Plaintiffs and members of the Class. Defendant has accepted and retained these benefits even though it failed to provide any service or product to its customers and failed to provide any manner to avoid these fees, making Defendant's retention of them unjust.

15

68.     By its wrongful acts and omission described herein, including charging fees for actions beyond the customer's control, and for which consumers had absolutely no way of avoiding, Defendant was unjustly enriched at the expense of Plaintiffs and the members of the Class.

69.     Plaintiffs and the Class's detriment, and Defendant's enrichment, were related to and flowed from the wrongful conduct alleged in this Complaint.

70.     Defendant has profited from its unlawful, unfair, misleading, and deceptive practices at the expense of Plaintiffs and the putative Class members. It would be inequitable for Defendant to retain the profits, benefits, and other compensation obtained from its wrongful conduct described herein.

71.     Plaintiffs and the members of the Class have been damaged as a direct and proximate result of Defendant's unjust enrichment.

72.     Plaintiffs and the members of the Class are entitled to recover from Defendant all amounts wrongfully collected and improperly retained by Defendant.

73.     As a direct and proximate result of Defendant's wrongful conduct and unjust enrichment, Plaintiffs and the members of the Class are entitled to restitution of, disgorgement of, and/or imposition of a constructive trust upon all profits, benefits, and other compensation obtained by Defendant for its inequitable and unlawful conduct.

<u>**COUNT III**</u>
**DECEPTIVE ACTS OR PRACTICES IN VIOLATION OF**
**O.C.G.A. §§ 10-1-393(A) *ET SEQ.***
**(Plaintiff Walker on behalf of herself and the Georgia Subclass)**

74.     Plaintiff Walker repeats and realleges each and every allegation contained in paragraphs 1–73 as if fully set forth herein.

75.     Plaintiff Walker brings this claim individually and on behalf of the members of the Georgia Subclass against Defendant.

76.     Plaintiff Walker maintained a Bank of America account located in Georgia, pursuant to the Deposit Agreement, during the applicable statute of limitations period.

16

77. "Under the FBPA, [u]nfair or deceptive acts or practices in the conduct of consumer transactions and consumer acts or practices in trade or commerce are declared unlawful." O.C.G.A. § 10-1-393(a); *Garner v. Academy Collection Service*, No. 3:04-cv-93, 2005 U.S. Dist. LEXIS 43266, at *6 (N.D. Ga. Mar. 11, 2005). To state a viable claim under the FBPA, the alleged harm must affect the consuming public. *Id*.; *Zeeman v. Black*, 156 Ga. App. 82, 83 (1980).

78. Charging Returned Item Chargeback Fees in the context of consumer retail deposit accounts is an unfair practice in the "channels of consumer commerce" because it impacts thousands of consumers throughout Georgia and the country. Further, charging these fees disproportionately impacted vulnerable consumers, which is fundamentally unfair and exploits disadvantaged groups. These fees, imposed regardless of the actions of the account holder, provide no additional service and are inherently unfair.

79. Defendant violated the FBPA by charging unlawful fees on its customers in the form of Returned Item Chargeback Fees, which its customers could do nothing to avoid. There was no justification for imposing these blanket fees during the applicable statute of limitations, which the CFPB has deemed "junk fees." Charging Returned Item Chargeback Fees is inherently unfair where the customer has no control and must incur penalties by no fault of their own. By imposing these fees on Plaintiff Walker and the Georgia Sublcass, Defendant engaged in an unfair business practice in violation of the FBPA.

80. Under the CFPA, an "unfair" act or practice is one that "causes or is likely to cause substantial injury to consumers which is not reasonably avoidable," and "such substantial injury is not outweighed by countervailing benefits to consumers or to competition." 12 U.S.C. § 5531(c)(1).

81. The CFPB — through Bulletin 2022-06 — has determined that Returned Item Chargeback Fees, such as those charged by Bank of America, are materially unfair and deceptive because they cause substantial injury to consumers and fall within the CFPA's definition of unfair acts and practices because such fees cause substantial financial injury to accountholders, are not

reasonably avoidable by accountholders, and do not provide a benefit that outweighs the injury they cause.

82.     Thus, pursuant to the CFPB's Bulletin 2022-06, Defendant's practice of charging Returned Item Chargeback Fees is deceptive and unfair and constitutes a violation of the FBPA.

83.     Defendant wrongfully obtained money from its customers with accounts located in Georgia, including Plaintiff Walker.

84.     Defendant's unlawful collection of the Returned Item Chargeback Fees during the applicable statue of limitations constitutes consumer-oriented conduct.  The fees are part of a broader scheme of imposing fees and charges in connection with maintaining an account at Bank of America and impacts millions of consumers. The improper and unlawful Returned Item Chargeback Fees represent funds in the possession of Defendant that rightfully belong to members of the Georgia Subclass, including Plaintiff Walker.

85.     Ms. Walker and all Georgia Subclass members sustained actual damages as a result of Defendant's unfair practice. The actual damages sustained by Plaintiff Walker and members of the Georgia Subclass were proximately caused by Defendant's unfair practice of charging Returned Item Chargeback Fees. In other words, had Defendant not engaged in the unfair practice of charging Returned Item Chargeback Fees, Ms. Walker and members of the Georgia Subclass would not have sustained damages. The actual damage is measured by the amount of the Returned Item Chargeback Fees charged by Defendant.

86.     By reason of the foregoing, Defendant's conduct, as alleged herein, constitutes a deceptive and unfair practice committed in the course of consumer transactions, that caused actual damages to Ms. Walker and the Georgia Subclass, in violation of the FBPA, and Defendant is liable to Ms. Walker and the Georgia Subclass for the damages they have sustained as a result of Defendant's actions.

87. Based on Defendant's unfair and/or deceptive acts or practices, Ms. Walker and the Georgia Subclass are entitled to relief, including restitution, actual damages, treble damages, punitive damages, costs, and attorneys' fees under O.C.G.A. § 10-1-399.

<u>COUNT IV</u>
**VIOLATION OF CALIFORNIA CONSUMER LEGAL REMEDIES ACT ("CLRA")**
**CAL. CIV. CODE §§ 1750, ET SEQ.**
**(Plaintiff Andrea Garcia on behalf herself and the California Subclass)**

88. Plaintiff Garcia repeats and realleges each and every allegation contained in paragraphs 1–88 as if fully set forth herein.

89. Plaintiff Garcia brings this claim individually and on behalf of the members of the California Subclass against Defendant.

90. Plaintiff Garcia maintained a Bank of America account located in California, pursuant to the Deposit Agreement, during the applicable statute of limitations period.

91. California's Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750, *et seq.*, proscribes "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer."

92. Defendant is a "person" as defined in Cal. Civ. Code § 1761(c).

93. The deposit accounts that Plaintiff Garcia and the members of the California Subclass opened with Defendant are "services" as defined in Cal. Civ. Code § 1761(b).

94. Plaintiff Garcia and the members of the California Subclass are "consumers" as defined in Cal. Civ. Code § 1761(d).

95. Defendant imposed unfair, unconscionable, and predatory fees on its customers in the form of Deposited Item Returned Fees, which their customers could do nothing to avoid. There was no justification for imposing these blanket fees during the applicable statute of limitations, which the CFPB has deemed "junk fees." By imposing these fees, which provided no service or product to its customers, including Plaintiff Garcia and the members of the California Sub-class, Defendant engaged in unfair business practice in violation of the CLRA.

19

96. Defendant's conduct as described herein was and is in violation of the CLRA. Defendant's conduct violates at least the following enumerated CLRA provisions:

    a. Cal. Civ. Code § 1770(a)(14): Representing that a transaction confers or involves rights, remedies, or obligations that it does not have or involve, or that are prohibited by law; and

    b. Cal. Civ. Code § 1770(a)(19): Inserting an unconscionable provision in the contract.

97. Charging Returned Item Chargeback Fees is a predatory practice that impacts thousands, if not millions, of consumers throughout California and the country, and they disproportionately impact vulnerable consumers. These blanket fees exploit consumers and can reinforce financial inequality. Thus, Defendant's actions, as alleged herein, affect the public interest.

98. These charges, which were automatically debited from consumers' accounts, were unilaterally imposed, are deceptive, unfair, predatory in nature, and unconscionable. The CFPB — through Bulletin 2022-06 — has determined that Returned Item Chargeback Fees, such as those charged by Bank of America, are materially unfair and deceptive because they cause substantial injury to consumers and fall within the CFPA's definition of unfair acts and practices because such fees cause substantial financial injury to accountholders, are not reasonably avoidable by accountholders, and do not provide a benefit that outweighs the injury they cause.

99. Thus, pursuant to the CFPB's Bulletin 2022-06, Defendant's practice of charging Returned Item Chargeback Fees is deceptive and unfair and constitutes a violation of the CLRA.

100. As a result of Defendant's actions, Plaintiff Garcia and the members of the California Subclass sustained actual damages. That actual damage is measured by the amount of the Deposited Item Returned Fees charged by Defendant.

101. On February 26, 2022, a CLRA demand letter was delivered to Defendant pursuant to Cal. Civ. Code § 1782. This letter provided notice of Defendant's violation of the CLRA and

demanded that Defendant correct the unlawful and deceptive practices alleged herein. Defendant did not offer any remedy to Plaintiff and each Subclass member. Accordingly, Plaintiff seeks all monetary relief available under the CLRA.

102.    Plaintiff Garcia and the members of the California Subclass are entitled to reimbursement in amounts to be determined at a later date, but not less than the full amount of the fees, and interest thereon, which Defendant has taken from Plaintiff Garcia and members of the California Subclass, as well as injunctive relief, reasonable attorneys' fees and costs, punitive damages, and any other relief the Court deems proper, pursuant to California Civil Code § 1780.

<u>COUNT V</u>
**VIOLATION OF CALIFORNIA UNFAIR COMPETITION LAW**
**BUS. PROF. CODE §§ 17200, *ET SEQ.***
**(Plaintiff Garcia on behalf of herself and the California Subclass)**

103.    Plaintiff Garcia repeats and realleges each and every allegation contained in paragraphs 1–102 as if fully set forth herein.

104.    Plaintiff Garcia brings this claim individually and on behalf of the members of the California Subclass against Defendant.

105.    California's Unfair Competition Law (the "UCL"), prohibits any "unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200.

106.    Defendant's acts and omissions as alleged herein constitute business acts and practices.

107.    The purpose of the UCL purpose is to protect both consumers and competitors by promoting fair competition in commercial markets for goods and services. In service of that purpose, the Legislature framed the UCL's substantive provisions in broad, sweeping language. By defining unfair competition to include any "any unlawful, unfair or fraudulent business act or practice," the UCL permits violations of other laws to serve as the basis of an independently actionable unfair competition claim and sweeps within its scope acts and practices not specifically proscribed by any other law.

21

108. The acts alleged herein are "unlawful" under the UCL in that they violate at least the Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750 *et seq*.

109. The UCL expressly provides for injunctive relief and contains provisions denoting its public purpose. A claim for injunctive relief under the UCL is brought by a plaintiff acting in the capacity of a private attorney general. Although the private litigant controls the litigation of an unfair competition claim, he or she is not entitled to recover compensatory damages for his or her own benefit, but only disgorgement of profits made by the defendant through unfair competition in violation of the statutory scheme, or restitution to victims of the unfair competition.

110. In addition, as alleged herein, Defendant's conduct violates the UCL because charging consumers "junk fees" that provide no tangible service or benefit to the consumers violates public policy.. The harm and adverse impact of Defendant's conduct on members of the general public was neither outweighed nor justified by any legitimate reasons, justifications, or motives. The harm to Plaintiff Garcia and the members of the California Subclass arising from Defendant's unlawful practices relating to the imposition of the improper, unfair, and predatory fees outweighs the utility, if any, of those practices.

111. Charging Returned Item Chargeback Fees is a predatory practice that impacts thousands, if not millions of consumers throughout California and the country, and disproportionately impacts vulnerable consumers. These blanket fees exploit consumers and can reinforce financial inequality. Defendant's unlawful business practices are immoral, unethical, oppressive, unscrupulous, unconscionable, and/or substantially injurious to Plaintiff Garcia and the members of the California Subclass, and the general public. Any countervailing benefits to consumers or competition did not outweigh this injury. Defendant's conduct damaged Plaintiff Garcia and the members of the California Subclass as they have collectively been forced to pay millions of dollars in improper fees. Defendant's unlawful acts and practices complained of herein affect the public interest.

112.     Moreover, Defendant's conduct violates the UCL to the extent it was unfair to implement a blanket practice of charged Returned Item Chargeback Fees to consumers for all returned checks irrespective of the circumstances or any action taken by the accountholder.

113.     As a direct and proximate result of Defendant's violations of the UCL, Plaintiff Garcia and the members of the California Subclass have been charged improper and illegal Returned Item Chargeback Fees, which were automatically debited from their accounts, and Defendant has received income, profits, and other benefits, which it would not have received if it had not violated the UCL. Plaintiff Garcia and the members of the California Subclass suffered an ascertainable loss and actual damages as a result of Defendant's conduct.

114.     Defendant's conduct caused and may continue to cause substantial injury to Plaintiff and the members of the California Sub-class.  Plaintiff and the members of the California Sub-class have suffered, and may continue to suffer in the future, injury in fact as a result of Defendant's unlawful conduct. Thus, injunctive relief enjoining Defendant's unlawful practices is proper.

115.     Unless the Court grants injunctive relief compelling Defendant to disgorge itself of the ill-gotten gains it realized through by charging Returned Item Chargeback Fees and create a constructive trust to provide relief for Plaintiff Garcia and the members of the California Subclass, representing the broader public interest, these individuals will have no avenue to hold Defendant accountable for its misconduct.

116.     Plaintiff Garcia, on behalf of the members of the California Subclass, requests that she be awarded all relief as may be available by law, pursuant to Cal. Bus. Prof. Code § 17203.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, individually and on behalf of all other similarly situated members of the Class and Subclasses, respectfully requests that the Court enter judgment against Defendant in the form of an Order:

A.     Certifying this action as a class action under Rule 23(b)(2) and (b)(3) of the Federal

Rules of Civil Procedure and naming Plaintiffs as a representative of the Class and Plaintiffs' undersigned attorneys as Class Counsel to represent the Class Members;

B.      Naming Plaintiff Walker as the representative of the Georgia Subclass;

C.      Naming Plaintiff Garcia as the representative of the California Subclass;

D.      Declaring that Defendant's conduct violated the laws referenced herein;

E.      Finding in favor of Plaintiffs and the Class and Subclasses on all counts asserted herein;

F.      Awarding actual, consequential, punitive, statutory, and treble damages;

G.      Awarding prejudgment and postjudgment interest on all amounts awarded;

H.      For injunctive relief as pleaded or as the Court may deem proper;

I.      For disgorgement and restitution to Plaintiffs and the Class and/or Sub-class members of all monies received or collected from Plaintiffs and the Class and/or Sub-class members and all other forms of equitable relief;

J.      Awarding Plaintiffs and the Class and Subclasses reasonable attorneys' fees and expenses and costs of suit;

K.      Awarding damages in an amount to be determined at trial; and

L.      For such other and further relief as the Court may deem proper.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand trial by jury as to all triable issues.

Dated: March 29, 2024                    Respectfully submitted,


                                          By: /s/ Dana Smith

                                          Dana Smith (NC Bar No. 51015)
                                          525 N. Tryon Street, Suite 1600, #7433
                                          Charlotte, North Carolina 28202
                                          Tel: (980) 448-1299

                                          Lisa R. Considine*
                                          David J. DiSabato*
                                          Oren Faircloth*
                                          745 Fifth Ave, Suite 500
                                          New York, NY 10151
                                          Telephone: 212-532-1091
                                          Facsimile: 646-417-5967
                                          Email: lconsidine@sirillp.com
                                          Email: ddisabato@sirillp.com
                                          Email: ofaircloth@sirillp.com
                                          * Special appearance to be filed

                                          *Attorneys for Plaintiffs and the Proposed Class and
                                          Subclasses*